101 F.3d 108
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Derek WILLIAMS, Defendant-Appellant.
 No. 95-1298.
 United States Court of Appeals, Second Circuit.
 March 12, 1996.
 
 APPEARING FOR APPELLANT: PAUL S. BRENNER, ESQ. 401 Broadway Suite 306 New York, N.Y. 10013
 APPEARING FOR APPELLEE: DAVID L. WALES, ESQ. ALEXANDRA REBAY, ESQ. Assistant United States Attorneys Southern District of New York
 S.D.N.Y.
 AFFIRMED.
 Appeal from the United States District Court for the Southern District of New York (Keenan, Judge).
 Present MESKILL, ALTIMARI, and CALABRESI, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.
 
 
 3
 The defendant/appellant Derek Williams ("Williams") appeals from a judgment of conviction and sentence of seventy-two months' imprisonment, imposed upon him on May 18, 1995 by the district court following a plea of guilty.
 
 
 4
 On November 10, 1993, Williams was arrested as a result of an ongoing undercover Drug Enforcement Agency ("DEA") investigation. According to the government, in September, 1993, Williams, on behalf of himself and a person named "Dennis", had engaged in negotiations with a confidential informant to sell to the informant one "unit" of heroin. A "unit" consists of 700 grams of heroin. On the day the transaction was to occur, the government alleges that Williams noticed undercover officers in the vicinity, became suspicious, and thereafter never contacted the informant to consummate the transaction. A warrant was subsequently issued for Williams's arrest.
 
 
 5
 Pursuant to a written plea agreement with the government, Williams pleaded guilty on May 10, 1994, to a one count indictment charging him and the individual named Dennis with conspiracy to distribute over 100 grams of heroin, in violation of 21 U.S.C. § 846 (1994). The written plea agreement provided, among other things, that the total amount of heroin to be included in the defendant's base offense level under the United States Sentencing Guidelines ("USSG") was in dispute and would be resolved by the district court.
 
 
 6
 Williams's base offense level is calculated pursuant to USSG § 2D1.1. Application Note 12 to the guideline provides the relevant guidance for circumstances where, as here, distribution of the controlled substance is uncompleted. It states in pertinent part:
 
 
 7
 In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.
 
 
 8
 USSG § 2D1.1, comment. (n. 12) (November, 1994). In this Circuit, the "intent and capability" standard of note 12 is read disjunctively, and requires the district court to exclude from the base offense level calculation the amount that the defendant did not intend to produce or was not reasonably capable of producing. See United States v. Hendrickson, 26 F.3d 321, 336-37 (2d Cir.1994). In Hendrickson, we explained at length that where the government asserts a conspiracy involving an uncompleted distribution in which "a particular defendant 'negotiated' a specified quantity of drugs, the amount of drugs that the defendant intended to produce informs the conspiratorial agreement as to amount, and consequently, 'the weight under negotiation.' " Id. at 335 (emphasis in original). Moreover, "the defendant's ability, which includes that of his co-conspirators, to produce specific amounts of narcotics, is hightly relevant in determining whether the conspirators agreed to produce these amounts." Id. at 337 (emphasis in original). The burden is on the government to prove the defendant's intent to produce the amount of drugs alleged. Id. at 332.
 
 
 9
 The district court held a Fatico hearing to resolve the amount of heroin involved that would determine Williams's base offense level. At the hearing the government presented evidence that it contended showed Williams's intent and capability to sell one unit of heroin to the informant and his buyer. We find the following evidence particularly supportive of the government's claim: (1) a piece of paper given to the confidential informant by Williams at a meeting between them on September 3, 1993, on which Williams had written "700", "$135", and "94,500"; at the Fatico hearing, the DEA agent handling the informant and who surveilled the meeting testified that Williams gave the informant a sample of heroin and told the informant he could supply him with a unit of the heroin, and that the price for the unit would be $135 per gram, or $94,500; (2) recorded conversations between Williams and the informant, in which Williams (i) states that he is selling the unit to the informant at the same price he paid for it, and that he would be given extra narcotics by the supplier--Dennis--with which he would "make money"; (ii) states that he has one unit in stock of the type of heroin in the sample given to the informant; and (iii) asks whether the informant's buyer has the $94,000 dollars; (3) a conversation between Williams and the DEA undercover agent posing as the informant's buyer recorded on September 22, 1993, the date the transaction was to occur, in which the agent asks Williams whether he has "the shit," and Williams replies "Yeah"; the agent testified that later that day he, the informant and Williams met in a restaurant, that the agent showed Williams a roll of $50,000, but that the transaction did not occur because Dennis never showed up; (4) a conversation of a meeting between Williams, Dennis, and the agent recorded on September 29, 1993, at which Williams decides not to complete the transaction after spotting undercover agents in a car, and (i) instead recommends that the agent leave the money "down here" and ride with Williams and Dennis to look at the "material" which was "in the top of Manhattan", and (ii) justifies his caution by explaining that his suppliers "have a lot of money they just lost one hundered thousand last night ....somebody got locked up, somebody was having a meeting just like we are going to do it now, everybody's taking a risk you understand" (emphasis added); and (5) a statement signed by Williams after his arrest in which he admits that "[the agent] and myself met once with the intention of Dennis coming to the meeting and selling [the agent] one unit of heroin. Dennis never made the meeting but [the agent] showed me the money to buy the unit. [The agent], Dennis, myself and Dennis' girlfriend met again a week later and tried to make the deal again for one unit of heroin. It did not happen again. I expected to receive $2,000 for my part of the deal."
 
 
 10
 During the hearing, when asked on cross-examination whether he was negotiating to sell a unit of heroin to the informant, Williams stated "Yes--I wasn't--I was the middleman in between."
 
 
 11
 Judge Keenan found that this evidence was clear and convincing proof that Williams and his co-conspirator Dennis negotiated, intended to sell, and had the ability to provide, one unit of heroin to the informant and the undercover agent posing as his buyer. Williams's contentions that he was "puffing" in order to ultimately sell the informant beepers was rejected by the district court.
 
 
 12
 We agree with the district court that the evidence described above is clear and convincing that Williams and Dennis had agreed to sell to the informant and the agent one unit of heroin for $94,000. Besides Williams's post-arrest statement and his testimony that he was the "middleman", the recorded conversations of the September 22 and September 29, 1993, meetings, and the conduct of the defendant as testified to by the agent present at these meetings who was posing as the buyer, evidence Williams's intent to sell the unit on these days. Williams's intent is further supported by the evidence indicating that on more than one occasion he indicated that he and his supplier had the unit and could produce it. The government, therefore, met its burden of proof on Williams's intent and capability, as that burden is delineated in Hendrickson, supra. Finally, we also agree with Judge Keenan that Williams failed to adequately rebut this evidence.
 
 
 13
 For the reasons stated above, the judgment of the district court is affirmed.